UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ORBUSNEICH MEDICAL CO., LTD., BVI, and ORBUSNEICH MEDICAL INC., | * * * * |
| Plaintiffs, | * * |
| v. | * Civil Action No. 09-10962-JLT * |
| BOSTON SCIENTIFIC CORPORATION, | * * |
| Defendant. | * |

MEMORANDUM

March 18, 2010

TAURO, J.

I.   Introduction

Plaintiffs OrbusNeich Medical Co. Ltd., BVI, and OrbusNeich Medical, Inc., (collectively "Orbus") and Defendant Boston Scientific Corporation ("BSC") manufacture and market medical devices, including luminal stents, which are used to treat coronary artery disease. The Amended Complaint alleges that BSC's Liberté brand stents infringe two patents owned by Orbus. In addition, Orbus' Amended Complaint asserts seven non-patent claims against BSC: breach of contract, breach of the implied covenant of good faith and fair dealing, misappropriation of trade secrets, unjust enrichment, fraud, unfair and deceptive trade practices in violation of Mass. Gen. Law c. 93A, and unfair competition.

Presently at issue are BSC's Motion to Dismiss Plaintiff's Amended Non-Patent Claims Under Rule 12(b)(6) [#60] and Orbus' Motion to Strike Exhibits A through K to Defendant's Memorandum in Support of Motion to Dismiss [#64]. For the following reasons, BSC's Motion

to Dismiss Plaintiff's Amended Non-Patent Claims Under Rule 12(b)(6) [#60] and Orbus' Motion to Strike Exhibits A through K to Defendant's Memorandum in Support of Motion to Dismiss [#64] are each ALLOWED IN PART and DENIED IN PART.

II.     Background[1]

    A.     Procedural Background

Orbus originally filed this action against BSC on March 16, 2009, in the United States District Court for the Eastern District of Virginia. On April 13, 2009, BSC filed its first Motion to Dismiss the Non-Patent Claims [#9]. Orbus entered an opposition to that motion on April 27, 2009, but the Eastern District of Virginia never reached BSC's motion to dismiss. Instead, it allowed BSC's simultaneous Motion to Change Venue [#11]. In so doing, the court found that "[t]he balance of considerations weigh in favor of transfer because Virginia is not Plaintiff's home forum, the underlying facts have no material connection to Virginia, and Virginia is not the 'center of accused activity,' as evidenced by the fact that none of the documents, evidence, or witnesses arise out of Virginia."[2]

Following transfer to this court on August 24, 2009, BSC renewed its Motion to Dismiss the Non-Patent Claims [#50], in order to address choice of law issues raised by the change in venue, to supplement its legal authority with Massachusetts and First Circuit cases on certain issues, and to clarify its motion in certain other respects. At that time, Orbus sought leave to

---

[1] Because the issues analyzed herein arise in the context of a motion to dismiss, the facts are presented as they are related in the plaintiff's complaint, Trans-Spec Truck Service, Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), and construed in the light most favorable to the plaintiff. See Pettengill v. Curtis, 584 F.Supp.2d 348, 362 (D.Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).

[2] Order Granting Motion to Change Venue [#38], 8.

2

amend its complaint, which this court allowed at a status conference held on September 2, 2009. Thereafter, BSC withdrew its renewed motion in light of Orbus's Amended Complaint. BSC has since filed a third Motion to Dismiss the Non-Patent Claims [#6], which is presently before this court.

      B.     Factual Background

In 2000 and 2001, Orbus principals met with representatives of BSC to discuss Orbus' stent design and clinical performance and to explore the potential for a joint venture between the two companies. In furtherance of these discussions, in July 2000 the parties entered into a Confidential Disclosure Agreement (the "CDA").

Pursuant to the CDA, Orbus provided BSC with trade secrets on a confidential basis. Importantly, BSC retained no license or right to commercially use the confidential information for any purposes other than the evaluation of a potential joint venture. The CDA expressly provided that Massachusetts law would govern any disputes arising thereunder "without regard for the conflicts of law provisions."[3]

After evaluating Orbus's samples, BSC declined to pursue any business arrangement with Orbus. Orbus now alleges, however, that BSC later breached the CDA and misappropriated Orbus's confidential information by disclosing it in a "Stent Patent Application."[4] Specifically, Orbus alleges that the patent application contained "several drawings that improperly incorporated trade secrets contained in the Orbus Proprietary Stent Information, including highly sensitive competitive information concerning helical elements, H-connections, and so-called

---

[3]Amended Compl., Ex. A, Confidential Disclosure Agreement.

[4]Amended Compl. ¶¶ 35-36.

'spooky geometry.'"[5]

III.  Discussion

In support of its Motion to Dismiss the Non-Patent Claims, BSC argues that all of Orbus' non-patent claims are barred by the relevant statutes of limitations. Additionally, BSC contends that Orbus' claims for unjust enrichment and common law unfair competition are precluded by law and that Orbus failed to plead the fraud claim with sufficient particularity to satisfy the requirements of Fed. R. Civ. P. 9(b).

A.  Standard of Review

When considering a motion to dismiss pursuant to Rule 12(b)(6), a "court must 'take all factual allegations as true and draw all reasonable inferences in favor of the plaintiff.'"[6] To survive a Rule 12(b)(6) motion to dismiss, a complaint must include factual allegations that, when taken as true, demonstrate a plausible claim for relief.[7]

"Ordinarily, of course, any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56. However, courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."[8]

---

[5]Id.

[6]Pettengill v. Curtis, 584 F.Supp.2d 348, 362 (D.Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).

[7]Bell Atlantic v. Twombly, 550 U.S. 544, 555-558 (2007); see Trans-Spec Truck Service, Inc., 524 F.3d at 320.

[8]Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

4

An affirmative defense, such as the statute of limitations, may be adjudicated on a motion to dismiss only if "the facts that establish the defense [are] definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice."[9]

### 1. Motion to Strike Exhibits to Defendant's Motion to Dismiss

BSC has based its motion to dismiss on the Amended Complaint and the following documents attached as exhibits: (1) BSC's 2002 Annual Report, (2) an email dated June 26, 2003 and purportedly written by Orbus' President and CEO, Alfred J. Novak, (3) an academic study prepared by Dr. Pavel Cervinka (the "Cervinka Study") regarding Orbus' Genous stent, and (4) seven BSC patent applications. Orbus contends in its Motion to Strike Exhibits A through K to Defendant's Memorandum in Support of Motion to Dismiss [#64] that these exhibits are not properly before the court at this stage in the proceedings. This court agrees in part and disagrees in part.

Because BSC's 2002 Annual Report was filed with the Securities and Exchange Commission no later than April 7, 2003, this court may properly consider it on a motion to dismiss as a matter of official public record.[10] The public filing of this document with a regulatory agency also makes it a proper subject of judicial notice, at least with regard to the fact that it contains certain information, though not as to the truth of its contents.[11]

---

[9]In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003).

[10]Def.'s Mem. Opp. Pl.'s Mot. Strike, 4.

[11]See Staehr v. Hartford Financial Services Group, Inc., 547 F.3d 406, 425 (2d Cir. 2008) ("We have previously held that it is proper to take judicial notice of the fact that press coverage, prior lawsuits, or regulatory filings contained certain information, without regard to the truth of their contents, in deciding whether so-called 'storm warnings' were adequate to trigger inquiry

5

With regard to the June 26, 2003, email purportedly authored by the President and CEO of Orbus, BSC argues that this court may properly consider it in conjunction with the motion to dismiss because "the authenticity of the email cannot seriously be disputed."[12] This claim is easily refuted because Orbus does in fact dispute the authenticity of the email. Because the email is neither a matter of public record, nor an appropriate subject for judicial notice, nor incorporated by reference into the Amended Complaint, this court may not properly consider it on a motion to dismiss.

Orbus challenges BSC's reliance on the Cervinka Study, which was published on the internet in early 2009 and which reported poor clinical results for Orbus' Genous stent. BSC argues that it attached the study, not to establish its defenses as a legal matter, but rather to illuminate Orbus' motivations for filing the lawsuit when it did. Further, BSC claims that the study is properly before the court because it is publicly available and its authenticity has not been questioned. Orbus counters that this court should not consider the study because it bears no relation to any legal or factual issues presented by BSC's motion to dismiss.

As explained above, the general rule on a motion to dismiss is that the court may only consider the Complaint and documents attached to it or expressly incorporated therein. The exception for documents the authenticity of which is not disputed by the parties is narrow.[13] Because the Cervinka Study is not probative of the legal questions this court must address in BSC's motion to dismiss, such a narrow exception cannot provide a basis for consideration of this

---

notice.").

[12] Def.'s Mem. Opp. Pl.'s Mot. Strike, 6.

[13] See Watterson, 987 F.2d at 3.

document.

Lastly, Orbus challenges BSC's reliance on seven different patent applications. BSC argues that it properly attached all seven patent applications to its memorandum, even though only one patent application is incorporated into the Amended Complaint by reference, because Orbus failed to identify with specificity the patent application on which it bases its claims. The Amended Complaint identifies the relevant patent application by the title "Flexible and Expandable Stent" and lists Messrs. Gregorich and Girton as the inventors.[14]

BSC claims that no such patent application exists and has instead attached seven patent applications that each comport with some portion of Orbus' description of the relevant application. BSC's motion to dismiss, however, focuses on two patent applications that most closely fit the description of the patent application forming the basis of the Amended Complaint: (1) Application No. 2002/0055770 (the "'770 Application"), which was published on May 9, 2002, bears the title "Flexible and Expandable Stent" and lists Mr. Girton and others, but not Mr. Gregorich, as inventors; (2) Application No. 2002/0095208 (the "'208 Application"), which was published on July 18, 2002, bears the title "Stent" and lists Messrs. Girton and Gregorich as inventors.

Notably, Orbus' Motion to Strike contends that only the '208 Application contained in Exhibit I is incorporated by reference into the Amended Complaint. This court finds it appropriate, therefore, to construe the Amended Complaint as referencing the '208 Application, particularly in light of the fact that BSC relies heavily on the publication date for the '208 Application in support of its current motion to dismiss.

---

[14]Amended Compl. ¶ 35,

Accordingly, Orbus' <u>Motion to Strike Exhibits A through K to Defendant's Memorandum in Support of Motion to Dismiss</u> [#64] is ALLOWED as to the June 26, 2003, email, the Cervinka Study, and the patent applications contained in Exhibits E, F, G, H, J, and K to the <u>Motion to Dismiss the Non-Patent Claims</u>, but DENIED as to BSC's 2002 Annual Report and the '208 Application contained in Exhibit I to the <u>Motion to Dismiss the Non-Patent Claims</u>.

In light of this ruling, the following discussion of BSC's <u>Motion to Dismiss the Non-Patent Claims</u> relies only on the facts as presented by the Amended Complaint, the 2002 Annual Report, and the '208 Application.

2. <u>Motion to Dismiss the Non-Patent Claims</u>

a. <u>Statute of Limitations</u>

As discussed below, this court must dismiss the claim for unjust enrichment, alleged in Count VI of the Amended Complaint, because it is precluded by law. This court must also dismiss the claim for fraud, alleged in Count VII of the Amended Complaint, for failure to comply with the pleading requirements set forth in Fed. R. Civ. P. 9(b). With regard to the five remaining non-patent claims, however, BSC's Motion to Dismiss raises two issues: (1) whether Virginia or Massachusetts law should supply the statutes of limitations governing this case and (2) applying the appropriate statutes of limitations, whether the remaining claims are indeed time-barred.

1. <u>Choice of Law</u>

As a general rule, "when a case is transferred to a new venue pursuant to 28 U.S.C § 1404(a), the choice of law rules of the transferor venue apply"[15] because a change from one

---

[15]<u>Brown v. Hearst Corp.</u>, 862 F. Supp. 622, 626 (D. Mass. 1994).

proper venue to another "should be, with respect to state law, but a change of courtrooms."[16] Accordingly, when a case is transferred from a court sitting in a state that considers statutes of limitations to be procedural, "the transferee court is required to apply the statute of limitations of the transferor court's forum state, because that is what the transferor court would have done had the action remained there."[17]

In light of the generally applicable principles outlined above, BSC argues in favor of applying Virginia's statutes of limitations and tolling principles to the current action because Virginia, Orbus' original choice of forum, considers statutes of limitations to be procedural.[18] Orbus counters, however, that this court should apply Massachusetts' statutes of limitations as required by the choice of law provision agreed to in the CDA, which states that the "Agreement is governed by the Laws of the Commonwealth of Massachusetts, USA, without regard for the conflicts of law provisions."[19]

It is well-settled law that parties may select by agreement the body of law that will govern their contractual disputes.[20] And having so agreed, the parties are bound by their choice of law unless the chosen law violates established public policy or bears no reasonable relationship to the

---

[16] Van Dusen v. Barrack, 376 U.S. 612, 639 (1964).

[17] 17 Moore's Fed. Practice § 111.20(c)(iii).

[18] See Barry v. Donnelly, 781 F.2d 1040, 1042 n.4 (4th Cir. 1986) ("The law of the forum determines all matters involving the application of the statute of limitations, including whether and how the statute may be tolled by a particular event.") (applying Virginia law).

[19] Amended. Compl., Ex. A, Confidential Disclosure Agreement, 2.

[20] Lambert v. Kysar, 983 F.2d 1110, 1118 (1st Cir. 1983).

contract.[21]  As a general matter, however, contractual choice of law provisions apply only to issues of substantive law and do not govern questions of procedural law that may arise in a contractual dispute.[22]

Nonetheless, Orbus contends that the language "without regard to the conflict of law provisions" operates as a contractual exclusion of the distinction between substantive law and procedural law, thereby requiring the court to apply both the substantive and procedural laws of the state indicated in the choice of law provision.[23]  Accordingly, the argument goes, this court should apply Massachusetts statutes of limitations to the present action because that is the governing law to which the parties have agreed in all respects.  This court agrees.

Both Virginia and Massachusetts adhere to traditional rule that "the nature, validity and interpretation of contracts are governed by the law of the place where made, unless the contrary appears to be the express intention of the parties."[24]  This court must, therefore, interpret the language of the CDA's choice of law provision in light of Massachusetts principles of contract interpretation.

Under Massachusetts law, the interpretation of unambiguous contract language is a question of law for the court to decide, as is the preliminary question of whether contract

---

[21]Id.

[22]See,e.g., Hooper v. Musolino, 234 Va. 558, 566-67 (1988); R.I. Depositors' Econ. Prot. Corp. v. Katsarakes, 3 Mass. L. Rep. 341, at *4-6 (Mass. Super. 1995).

[23]See Educ. Res. Inst., Inc. v. Orndorff, 2008 Va. Cir. LEXIS 176, at *3 (Dec. 18, 2008).

[24]See Woodson v. Celina Mutual Ins. Co., 211 Va. 423, 426 (1970); Thomas G. Jewett, Inc. v. Keystone Driller Co., 282 Mass. 469, 475 (1933).

language in fact contains ambiguities in the first instance.[25]  Contract language is sufficiently ambiguous to prevent the court from interpreting it as a matter of law only when "the phraseology can support reasonable differences of opinion as to the meaning of the words employed."[26]  If contract language is unambiguous, however, it "must be enforced according to its terms."[27]

The CDA's choice of law provision is not ambiguous on its face and, importantly, BSC does not argue that the language "without regard for the conflicts of law provisions" can support conflicting interpretations.  In fact BSC does not address this phrase at all and instead relies entirely on the general principle that choice of law provisions dictate only which substantive law governs the contract at issue.

This court, however, is not at liberty to disregard the parties' addition of the phrase "without regard to the conflicts of law provisions" as BSC has done.  "It is a canon in the interpretation of contracts that every word and phrase must be presumed to have been employed with a purpose, and must be given a meaning and effect whenever reasonably possible."[28]  And this court finds that the phrase "without regard for the conflicts of laws provisions" unambiguously expresses the parties' intention to exclude consideration of *all* conflicts of law provisions in determining which law to apply to various aspects of a dispute arising under the CDA.

To begin with, the plain language of the phrase "without regard for the conflicts of law

---

[25]Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 287 (2007).

[26]Coll v. PB Diagnostic Systems, Inc., 50 F.3d 1115, 1122 (1st Cir. 1995).

[27]Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992).

[28]Clark v. State Street Trust Co., 270 Mass. 140, 155 (1930) (internal citations omitted).

11

provisions," does not confine itself to only those conflicts of law provisions pertaining to the choice of substantive law. If the parties had intended to so confine the phrase, they easily could have done so. Instead, they chose language which, on its face, sweepingly excludes, in the plural, consideration of all conflicts of law provisions in deciding any issue as to governing law. This, in and of itself, indicates to this court that the parties have selected Massachusetts law to govern all aspects of their dispute, without regard to their substantive or procedural nature. Any other conclusion contradicts the plain language of the choice of law provision.

Moreover, the contrary conclusion–that "without regard to the conflicts of law provisions" only excludes consideration of the choice of law rules pertaining to substantive law–would render the phrase a meaningless redundancy. Had the choice of law provision merely said "this agreement is governed by the laws of Massachusetts," it clearly would have conveyed to this court that the parties intended for Massachusetts substantive law to apply to disputes arising under the contract. The parties needed go no further to express such an intention.

But, importantly, the language of the CDA did go further. And this court must give meaning and effect to that additional language.[29] It can fathom no other way to do so, but to interpret it as a statement of the parties intention that this court disregard all conflicts of law provisions that might otherwise apply, in favor of straightforwardly applying Massachusetts law to all issues arising out of the contractual dispute, whether procedural or substantive.

In light of the foregoing, this court must apply Massachusetts statutes of limitations to Orbus' claims.

2. <u>Application of Statutes of Limitations</u>

---

[29]See <u>Clark</u>, 270 Mass. at 155.

The relevant Massachusetts statutes of limitations are as follows: claims arising in contract are governed by a six-year statute of limitations;[30] claims arising in tort are governed by a three-year statute of limitations;[31] and a statutory claim arising under Mass. Gen. Laws c. 93A is governed by a four-year statute of limitations.[32] All of Orbus' claims stem from BSC's allegedly improper use of Orbus' confidential proprietary information in the '208 Application, published in July 2002. Accordingly, the limitations period for all claims would have run no later than July 2008, nearly one year before Orbus filed its Amended Complaint, unless a tolling principle or the discovery rule applies.

First, Orbus argues that the statutes of limitations should be tolled by the fraudulent concealment doctrine. A statute of limitations may be equitably tolled if the wrongdoer concealed the existence of the cause of action through an affirmative act done with the intent to deceive.[33] "Mere silence by the person liable is not concealment, but there must be some affirmative act or representation designed to prevent, and which does prevent, the discovery of the cause of action."[34] Importantly, "the mere assertion that fraud underlies a claim is insufficient to state a fraudulent concealment claim."[35]

---

[30]Mass. Gen. Laws c. 260 § 2.

[31]Mass. Gen. Laws c. 260 § 2A.

[32]Mass. Gen. Laws c. 260 § 5A.

[33]See, e.g., Patsos v. First Albany Corp., 433 Mass. 323, 328-39 (2001) (quoting Riley v. Presnell, 409 Mass. 239, 247 (1991).

[34]Trident-Brambleton, LLC v. PPR No. 1, LLC, 2006 U.S. Dist. LEXIS 48752, at *12-13 (E.D. Va. July 5, 2006) (quoting Newman v. Walker, 270 Va. 291 (2005)).

[35]Hodas v. Sherburne, Powers & Needham, P.C., 938 F.Supp. 60, 63 (D. Mass. 1996). See also Myska v. RMS Techs. Inc., 25 Va. Cir. 344, 345 (Va. Cir. Ct. 1991).

Orbus states that BSC "concealed the discovery of the cause of action by trick or artifice," but does not allege any facts suggesting that BSC had the requisite intent to deceive. Indeed, the Patent and Trademark Office's publication of the '208 Application belies the claim that BSC intended to conceal their alleged use of Orbus' confidential information. This is sufficient to defeat a claim of equitable tolling due to fraudulent concealment, absent some factual allegations that BSC engaged in an affirmative act post-publication to prevent Orbus from discovering the contents of the '208 Application.

Secondly, Orbus claims that the statutes of limitations should be equitably tolled because BSC breached a fiduciary duty of full disclosure, which it owed to Orbus because of the CDA. Where a fiduciary relationship exists, a failure to affirmatively and adequately disclose facts that would give rise to knowledge of the cause of action constitutes fraudulent concealment for purposes of the tolling the statute of limitations.[36] Under such circumstances, the limitations period is tolled until the plaintiff actually becomes aware of the operative facts underlying the cause of action.[37] Nonetheless, Orbus' assertion that the CDA gave rise to a fiduciary relationship between the parties is unavailing.

Though the existence of a fiduciary relationship is typically a factual determination, "[b]usiness relationships or arms length transactions do not in general rise to the level of a fiduciary relationship."[38] Orbus alleges that it relied on the relationship of trust and confidence

---

[36]Demoulas v. Demoulas Super Markets, Inc., 424 Mass. 501, 519 (1997).

[37]Mass. Eye and Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 242 (1st Cir. 2005).

[38]Savoy v. White, 139 F.R.D. 265, 267 (D. Mass 1991) (citing McIntyre v. Okurowski, 717 F.Supp. 10, 11 (D. Mass. 1989)).

created by the CDA, but there is nothing to suggest that BSC *knew* Orbus was relying on it as a fiduciary. And "the plaintiff alone, by reposing trust and confidence in the defendant, cannot thereby transform a business relationship into one that is fiduciary in nature."[39]

Moreover, to invoke this equitable tolling principle, "plaintiff must be able to show not only that crucial facts were withheld by defendants owing a duty of full disclosure, but also that [it] lacked the means to uncover these facts."[40] Orbus admits that the '208 Application was published and, therefore, publicly available in 2002. Although Orbus did not have a duty to conduct a searching inquiry of the application upon publication, as explained below, it certainly cannot argue that it did not have the *means* to uncover the facts contained within a publicly available document.

Thirdly, Orbus argues that the statute of limitations should be tolled based on a theory of continuing wrongdoing. To this end, the Amended Complaint alleges that "Boston Scientific used and is continuing to use certain of the Orbus Proprietary Stent Technology rightfully belonging exclusively to Orbus...."[41] This argument is similarly unavailing under Massachusetts law. All of the allegations contained in Orbus' Amended Complaint stem from the same alleged wrong, i.e. the improper use of Orbus' confidential information in the '208 Application. Any continuing use of Orbus' technology does not give rise to separate causes of action. Rather it merely constitutes the "continuing ill effects" of BSC's initial misappropriation.[42]

---

[39] Superior Glass Co. v. First Bristol County Nat'l Bank, 380 Mass. 829, 832 (1980) (internal quotation omitted).

[40] Maggio v. Gerard Freezer & Ice. Co., 824 F.2d 123, 131 (1st Cir. 1987).

[41] Amended Compl. ¶ 37. See also, id. at ¶¶ 38, 70.

[42] See Borghese v. Senior, 2009 WL 1663883, at *2 (Mass. Super. Ct. May 7, 2009).

Nonetheless, Massachusetts applies the "discovery rule" to all claims based on an alleged misrepresentation that concerns a fact inherently unknowable to the injured party, such as in the five non-patent claims at issue here.[43] Under the discovery rule, the "cause of action...does not accrue until the plaintiff knew, or in the exercise of reasonable diligence should have known of the factual basis for his cause of action."[44]

The plaintiff need not know every fact required to prevail on the claim.[45] Instead, the limitations period is triggered when the plaintiff has enough information to suggest that he has suffered an injury caused by the defendant's conduct.[46] The court must ask whether sufficient facts were available to provoke a reasonable person in the plaintiff's circumstances to inquire or investigate further.[47] If so, the plaintiff is charged with the constructive notice of "what he or she would have uncovered through a reasonably diligent investigation."[48]

BSC argues that a "reasonably diligent investigation" would have uncovered the contents of the published '208 Application and the drawings contained in the 2002 Annual Report. Thus, BSC claims that this court should charge Orbus with knowledge of those contents at the time of

---

[43]See id.; Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 29 Mass. App. Ct. 215, 221 (1990).

[44]Wolinetz v. Berkshire Life Ins. Co., 361 F.3d 44, 47-48 (1st Cir. 2004) (internal quotation omitted); Rossman v. Lazarus, 2009 U.S. Dist. LEXIS 1741, at *17 (E.D. Va. January 9, 2009) ("To comply with the due diligence requirement, the plaintiff must use such a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent person under the particular circumstances.").

[45]Riley v. Presnell, 409 Mass. 239, 243 (1991).

[46]Wolinetz, 361 F.3d at 48 (citing Int'l Mobiles Corp., 29 Mass. App. Ct. at 218).

[47]McIntyre v. United States, 367 F.3d 38, 52 (1st Cir. 2004) (internal citation omitted).

[48]Id. (internal citation omitted).

16

their publication. In support of this argument, BSC relies on a body of case law charging plaintiffs with inquiry notice of the entire contents of lengthy and complex publicly available documents.[49]

BSC is correct that courts will charge a plaintiff with constructive notice of the contents of public records under certain circumstances. But BSC ignores the essential prerequisite to such an imposition: the plaintiff must have been under a *duty* to inquire into the contents of the relevant public records. Such a duty arises only when sufficient facts were available to provoke a reasonable person to investigate their contents.[50] In this case, BSC alleges nothing which would suggest that Orbus had any reason to suspect a potential misappropriation of its confidential information, such that it was under a duty to investigate the contents of BSC's published patent applications or annual report. And this court finds it unreasonably burdensome to impose a duty to conduct this kind of searching inquiry, in the absence of evidence that some precipitating event should have provoked Orbus to do so.

Because this court cannot charge Orbus with knowledge of the contents of the '208 Application or the 2002 Annual Report as of their respective dates of publication, it has no basis on which to conclude that Orbus' claims are untimely under the discovery rule.

b. Unjust Enrichment Claim Precluded by Law

Massachusetts law precludes a plaintiff from asserting an unjust enrichment claim when the subject matter of the claim is governed by a valid written contract between the parties.[51]

---

[49]See Def.'s Mem. Supp. Mot. Dismiss, 6 (citing cases).

[50]See McIntyre, 367 F.3d at 52.

[51]See,e.g., Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 250 (1993).

Because Orbus alleges in the Amended Complaint that the unjust enrichment claim arises from a breach of the written CDA and the parties do not dispute the CDA's validity, this court must dismiss Orbus' claim for unjust enrichment, alleged in Count VI of the Amended Complaint.

### c. Common Law Unfair Competition Claim Not Precluded by Law

BSC asks this court to dismiss Orbus' claim for unfair competition under the common law because it is subsumed by the claim arising under Mass. Gen. Laws c. 93A § 11. Chapter 93A, however, only provides a remedy for unfair and deceptive business practices that occur primarily and substantially within Massachusetts.[52] As such, Orbus is entitled to the opportunity to adduce through discovery whether the evidence will ultimately support a sufficient nexus between the alleged conduct and Massachusetts to make the conduct actionable under Chapter 93A. Should the evidence fail to bear out such a nexus, Orbus' common law unfair competition claim may proceed. Accordingly, this court finds it inappropriate to dismiss the common law unfair competition claim, alleged in Count IX of the Amended Complaint, at this stage of the proceedings.

### d. Fraud Claim Not Pleaded with Sufficient Particularity

BSC argues that this court should dismiss Orbus' fraud claim, alleged in Count VII of the Amended Complaint, because it does not satisfy Fed. R. Civ. P. 9(b), which requires that parties alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Conclusory allegations are insufficient to satisfy this rule. Rather, to comply with Rule 9(b), a plaintiff must specify the time, place, and content of an alleged false representation sufficiently to

---

[52]Mass. Gen. Laws c. 93A § 11.

put defendants on notice and enable them to prepare meaningful responses.[53]

Orbus' conclusory allegation that "BSC fraudulently induced Orbus to disclose its trade secreted, confidential and proprietary information to BSC with full knowledge that BSC intended to misappropriate the same" is plainly insufficient to satisfy the specificity requirements of Rule 9(b). Orbus contends that the "assurances of confidentiality reiterated in the CDA establish Boston Scientific's false representation that it would keep the material it received from Orbus secret."[54] But this is evidence of breach of the CDA, not evidence of fraudulent inducement to enter the CDA.

Orbus additionally argues that its allegations as to fraud are sufficient because the information needed to plead the particulars of the fraud are in the hands of BSC. But Orbus is not required to plead with specificity as to the circumstances or evidence from which fraudulent intent could be inferred.[55] Rather, Orbus merely must specify the time, place, and content of the false representations that Orbus itself received and upon which it relied in executing the CDA. By necessity, this information, if it exists, must be in Orbus' possession. Accordingly, this court must dismiss Orbus' fraud claim for failure to comply with the specificity in pleading required by Rule 9(b).

IV.   Conclusion

---

[53] See, e.g., McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228 (1st Cir. 1980); U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008); Blacksmith Investments, LLC v. Cives Steel Co., Inc., 228 F.R.D. 66, 73 (D. Mass. 2005) ("The complaint does not allege who made the statements, who relied on them, where or when they were made, or even the contents of the allegedly misleading comments.").

[54] Pl.'s Mem. Opp. Def.'s Mot. Dismiss, 19-20.

[55] See McGinty, 633 F.2d at 228.

For the foregoing reasons, Orbus' <u>Motion to Strike Exhibits A through K to Defendant's Memorandum in Support of Motion to Dismiss</u> [#64] is ALLOWED as to the June 26, 2003, email, the Cervinka Study, and the patent applications contained in Exhibits E, F, G, H, J, and K to the <u>Motion to Dismiss the Non-Patent Claims</u>, but DENIED as to BSC's 2002 Annual Report and the '208 Application contained in Exhibit I to the Motion to Dismiss. BSC's <u>Motion to Dismiss Plaintiff's Amended Non-Patent Claims Under Rule 12(b)(6)</u> [#60] is ALLOWED as to the unjust enrichment and fraud claims, alleged in Counts V and VII respectively, but DENIED as to all other non-patent claims.

AN ORDER HAS ISSUED.

    /s/ Joseph L. Tauro  
United States District Judge